J-S37024-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| NOEL GREGORY PAGAN | : | |
| | : | |
| Appellant | : | No. 486 EDA 2024 |

Appeal from the Judgment of Sentence Entered October 27, 2023
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s): CP-46-CR-0000771-2022

BEFORE:  BOWES, J., MURRAY, J., and SULLIVAN, J.

MEMORANDUM BY MURRAY, J.:                    **FILED NOVEMBER 13, 2024**

Noel Gregory Pagan (Appellant) appeals from the judgment of sentence imposed following his guilty plea to aggravated assault and possessing an instrument of crime (PIC).[1]  We affirm.

On November 15, 2021, Appellant entered his ex-girlfriend's house, "entered the bedroom, engaged in a fight with Jermial Denick [(the victim),] and stabbed [the victim] twelve times[,] resulting in him having a punctured lung."  N.T., 10/27/23, at 13.

Appellant entered a negotiated guilty plea to aggravated assault and PIC on October 27, 2023.  In exchange, the Commonwealth agreed to *nolle prosse* all remaining charges.  On the same date, the trial court sentenced Appellant,

_____

[1] 18 Pa.C.S.A. §§ 2702(a)(1), 907.

in accordance with the plea agreement, to an aggregate 7 to 14 years' imprisonment, with credit for time served.[2]

On November 14, 2023, Appellant filed an untimely post-sentence motion requesting to withdraw his guilty plea, and asserting his innocence. Appellant's counsel (plea counsel) simultaneously filed a petition to withdraw from representation. Subsequently, on January 8, 2024, Appellant filed a *pro se* Post Conviction Relief Act (PCRA)[3] petition alleging plea counsel's ineffectiveness. The PCRA court dismissed the PCRA petition "without prejudice to [Appellant's] right to re-file upon disposition of the post sentence motion to withdraw guilty plea, filed on November 11, 2023[,] and pending before [the] court, or upon exhaustion of his direct appeal rights." Order, 1/11/24 (some capitalization modified; footnote omitted). The court also directed the Commonwealth to file a response to Appellant's post-sentence motion by January 31, 2024.

Appellant filed a *pro se* notice of appeal on January 25, 2024, which was docketed in this Court at 486 EDA 2024. On the same date, Appellant filed in this Court an application to file an appeal, *nunc pro tunc*.

---

[2] Appellant also stipulated to violating a probationary sentence he was then serving on an unrelated docket. While sentencing Appellant in the instant matter, the trial court also revoked Appellant's probation and imposed a 1- to 2-year prison term. The court ordered the revocation sentence to run concurrently with the sentence imposed on the instant matter.

[3] **See** 42 Pa.C.S.A. §§ 9541-9546.

The Commonwealth filed a response to Appellant's post-sentence motion on February 2, 2024.

On February 15, 2024, the trial court entered an order permitting plea counsel to withdraw from representation, and appointing Appellant new counsel. On the same date, the trial court entered an order denying Appellant's post-sentence motion to withdraw his guilty plea. Appellant subsequently filed another *pro se* PCRA petition alleging plea counsel's ineffectiveness. On February 29, 2024, the trial court issued the following order:

> [T]he court retroactively grants *nunc pro tunc* relief, effective February 14, 2024, with respect to [Appellant's] post sentence motion to withdraw guilty plea filed on November 14, 2023.
>
> On November 14, 2023, [plea] counsel filed a post sentence motion to withdraw guilty plea simultaneously with a petition to withdraw as private counsel for [Appellant] after express direction from the court's chambers to preserve [Appellant's] post sentence and appellate rights. On February 1[5], 2024, upon consideration of the post sentence motion and the Commonwealth's response, the court denied the post sentence motion on the merits, and inadvertently omitted the sentence that the court expressly granted *nunc pro tunc* relief. In the interest of judicial economy, **the court accepted and considered the post sentence motion as timely to ensure** [**Appellant's**] **post sentence rights and appellate rights remain intact.**

Order, 2/29/24 (emphasis added; footnote omitted).

Appellant filed a notice of appeal on the same date, which was docketed at 803 EDA 2024. This Court dismissed the appeal as duplicative of the first

appeal filed at 486 EDA 2024. Appellant and the trial court have complied with Pa.R.A.P. 1925.[4]

Appellant now raises the following issue for review:

> Did the lower court err in accepting [Appellant's] guilty plea since the plea was not knowing[ly] and voluntarily entered because [Appellant's] oral guilty plea colloquy failed to explain: (1) the right to confront and cross-examine witnesses at trial, (2) the fact that a jury's verdict would need to be unanimous, and (3) [Appellant] would have the right to participate in jury selection?

Appellant's Brief at 3.

Appellant argues the guilty plea colloquy was defective, because the trial court did not confirm Appellant's understanding of certain rights. *Id.* at 9, 12-13. According to Appellant, the written guilty plea colloquy, which he completed and signed, does not cure the defective oral colloquy. *Id.* at 14. Appellant claims the oral colloquy did not address his right to confront and cross-examine witnesses, his right to participate in jury selection, or the requirement that a jury's verdict be unanimous. *Id.*

"It is well[ ]settled that the decision whether to permit a defendant to withdraw a guilty plea is within the sound discretion of the trial court."

---

[4] On May 23, 2024, this Court issued a rule to show cause why the appeal should not be quashed as untimely, as Appellant's post-sentence motion was untimely filed and therefore did not toll the appeal period. In response, Appellant pointed to the trial court's February 29, 2024, order indicating it had intended to explicitly grant *nunc pro tunc* relief in its February 15, 2024, order. This Court subsequently discharged the rule to the show cause and referred the issue to the merits panel. Because the trial court expressly granted *nunc pro tunc* relief and considered Appellant's post-sentence motion as timely filed, we decline to quash the appeal.

***Commonwealth v. Kehr***, 180 A.3d 754, 757 (Pa. Super. 2018) (citation omitted). Further, concerning post-sentence motions to withdraw pleas, we have explained:

> Post-sentence motions for withdrawal are subject to higher scrutiny since courts strive to discourage entry of guilty pleas as sentence-testing devices. A defendant must demonstrate that manifest injustice would result if the court were to deny his post-sentence motion to withdraw a guilty plea. Manifest injustice may be established if the plea was not tendered knowingly, intelligently, and voluntarily. In determining whether a plea is valid, the court must examine the totality of the circumstances surrounding the plea. A deficient plea does not *per se* establish prejudice on the order of manifest injustice.

***Id.*** at 756-67 (citation and brackets omitted).

"In order for a guilty plea to be constitutionally valid, the guilty plea colloquy must affirmatively show that the defendant understood what the plea connoted and its consequences." ***Commonwealth v. Yeomans***, 24 A.3d 1044, 1047 (Pa. Super. 2011) (citation omitted); ***see also id.*** at 1046 ("The entry of a guilty plea is a protracted and comprehensive proceeding wherein the court is obliged to make a specific determination after extensive colloquy on the record that a plea is voluntarily and understandingly tendered." (citation omitted)). Moreover, "[a] defendant is bound by the statements which he makes during his plea colloquy and cannot assert challenges to his plea that contradict his statements when he entered the plea." ***Commonwealth v. Jamison***, 284 A.3d 501, 506 (Pa. Super. 2022).

The comment to Pa.R.Crim.P. 590 directs the trial court to elicit, at a minimum, the following information:

(1) Does the defendant understand the nature of the charges to which he or she is pleading guilty or *nolo contendere*?

(2) Is there a factual basis for the plea?

(3) Does the defendant understand that he or she has the right to trial by jury?

(4) Does the defendant understand that he or she is presumed innocent until found guilty?

(5) Is the defendant aware of the permissible range of sentences and/or fines for the offenses charged?

(6) Is the defendant aware that the judge is not bound by the terms of any plea agreement tendered unless the judge accepts such agreement?

Pa.R.Crim.P. 590, cmt.

"A written plea colloquy that is read, completed and signed by the defendant and made part of the record may serve as the defendant's plea colloquy when supplemented by an oral, on-the-record examination." ***Commonwealth v. Reid***, 117 A.3d 777, 783 (Pa. Super. 2015).[5]  As we have explained,

> even though there is an omission or defect in the guilty plea colloquy, a plea of guilty will not be deemed invalid if the circumstances surrounding the entry of the plea disclose that the defendant had a full understanding of the nature and

---

[5] Appellant cites to ***Commonwealth v. Clyburn***, 42 A.3d 296 (Pa. Super. 2012), arguing a written colloquy is insufficient to establish a defendant knowingly, intelligently, and voluntarily waived a constitutional right. Appellant's argument is unavailing.  At issue in ***Clyburn*** was the defendant's waiver of her right to counsel, which is governed by its own criminal procedural rule, Pa.R.Crim.P. 121.  ***See Clyburn***, 42 A.3d at 298-99.  Further, both the written and oral colloquies in ***Clyburn*** were silent as to one of the areas of inquiry required by Rule 121.  ***See id.*** at 301-02.

consequences of his plea and that he knowingly and voluntarily decided to enter the plea.

**Yeomans**, 24 A.3d at 1047 (citation omitted).

Instantly, the trial court concluded Appellant had entered a knowing, intelligent, and voluntary guilty plea. The court addressed Appellant's claim as follows:

> Appellant understood that by entering a negotiated plea of guilty, he was giving up the right to confront and cross-examine witnesses at trial. Appellant completed an extensive written colloquy in connection with his guilty plea, which the court reviewed and admitted into evidence. (N.T. Guilty Plea/**Gagnon**[6]/Sentencing 10/27/23, at 7, 12, Exhibit D-1). Appellant initialed each page and signed the last page of the written colloquy. Appellant acknowledged in the written guilty plea colloquy that he had sufficient time to talk with his attorney and that his attorney told him what the words in the colloquy mean. (Guilty Plea Colloquy, questions 33 and 34). Appellant also participated in an extensive oral colloquy under oath.
>
> Appellant affirmed that no one forced him or coerced him to enter into th[e] plea, and that he was pleading guilty o[f] his own free will. (Written Guilty Plea Colloquy, questions 28-31, 38, 39; N.T. Guilty Plea/**Gagnon**/Sentencing 10/27/23, at 15). He stated that if he were asked any questions contained in the written colloquy under oath on the record[,] the answers would remain the same and would be truthful. (N.T. Guilty Plea/**Gagnon**/Sentencing 10/27/23 at 7).
>
> Appellant understood that by pleading guilty he was giving up his right to a jury trial, which includes the right to confront and cross-examine witnesses at trial. (Written Guilty Plea Colloquy, question 16 and 17). In the oral colloquy, [plea] counsel asked Appellant the following questions:

---

[6] **Gagnon v. Scarpelli**, 411 U.S. 778 (1973).

Q. And you understand that you don't have to plead guilty. And, in fact, your case was scheduled for a jury trial for next week; is that right?

A. Yes.

Q. And you went over with [Attorney] Kenny,[7] and you and I also went over today, this morning, before court, what a jury trial looks like; is that right?

A. Yes, sir.

Q. And you understand during a jury trial, the prosecutor or District Attorney has the burden to prove you're guilty beyond a reasonable doubt?

A. Yes, sir.

Q. And you understand that you could testify in your own defense and call witnesses in your own defense?

A. Yes, sir.

Q. And you understand if you were to elect to not testify, the Judge would instruct the jury to not hold that against you and infer guilt by silence; right?

A. Yes, sir.

Q. And you understand that by pleading guilty, you're giving up that right to a trial?

A. Yes, sir.

(N.T. Guilty Plea/*Gagnon*/Sentencing 10/27/23 at 8-9).

_____

[7] Thomas Kenny, Esquire, represented Appellant during most of Appellant's criminal proceedings. Plea counsel also entered his appearance as counsel, and stood in for Attorney Kenny during the plea hearing. *See* N.T., 10/27/23, at 3. Appellant confirmed he was comfortable with plea counsel representing him during the guilty plea hearing in place of Attorney Kenny. *Id.* at 15.

The court conducted an oral colloquy of Appellant to confirm that Appellant was not forced, pressured or coerced to enter a plea of guilty. *Id.* at 15-16. The court reiterated to Appellant that when he enters a plea of guilty[,] he gives up all of his rights except four (4) appellate rights as detailed in the written guilty plea colloquy. Appellant stated that he understood he was giving up his rights, and he stated that he did. *Id.* at 19. The court asked Appellant whether he was voluntarily giving up his rights and entering a guilty plea, and he stated "yes." *Id.*

Next, [the right to participate in jury selection was adequately explained to Appellant, and] Appellant understood that if he chose to proceed to trial, the jury's verdict would need to be unanimous. Question 17 in the written guilty plea colloquy asked, "Do you understand that the right to a trial by jury means that you can take part in the selection of the jury with your attorney; that the jury is chosen from the voters registration list and licensed drivers of Montgomery County, and that all 12 people on your jury must agree on your guilt beyond a reasonable doubt, before you can be convicted of the crime or crimes with which you are charged?" Appellant marked "yes" to question 17. In addition, Appellant confirmed during the oral colloquy that he understood the trial rights he was giving up by entering a guilty plea. *Id.* at 8.

….

In this case, both [plea] counsel and the [trial] court conducted an oral colloquy of Appellant to establish that he understood the trial rights he was relinquishing by entering a negotiated plea of guilty. Appellant affirmed that he understood the trial rights he was giving up. *Id.* at 8, 17, 19.

Based on the foregoing, the totality of the circumstances indicate that Appellant had a full understanding of the nature and consequences of his plea. Appellant understood he was pleading guilty; he understood the nature of the charges to which he was pleading guilty; he understood the maximum sentences he was facing; he understood his trial rights and that he was relinquishing those rights by pleading guilty; and[] he understood his post sentence and appellate rights. The court conducted a separate inquiry of Appellant in accordance with [Pa.R.Crim.P.] 590. The court determined that Appellant understood the terms of the guilty

plea and knowingly, intelligently and voluntarily entered a plea of guilty in this case.

Trial Court Opinion, 4/18/24, at 10-13 (footnotes added).

Upon review, we agree with the trial court's conclusion that, under the totality of the circumstances, Appellant's plea was knowingly, intelligently, and voluntarily entered. Appellant agreed to the factual basis for his plea, as set forth by the Commonwealth during the hearing. N.T., 10/27/23, at 13. The record confirms Appellant completed a written guilty plea colloquy, which he reviewed with plea counsel prior to the hearing. *See* Written Plea Colloquy, 10/27/23; *see also* N.T., 10/27/23, at 7 (wherein Appellant confirmed he initialed each page of the written colloquy and signed the final page, and indicated he would answer all questions contained in the written colloquy the same way if he were asked in open court). Appellant also confirmed he had reviewed his right to a jury trial, as well as "what a jury trial looks like," with both Attorney Kenny and plea counsel before proceeding with the guilty plea. N.T., 10/27/23, at 8. The trial court supplemented the written guilty plea colloquy with an on-the-record colloquy to confirm Appellant's understanding of the rights he would forego by pleading guilty. *See id.* at 14-20; *see also Reid*, *supra*.

Based on the foregoing, we discern no abuse of the trial court's discretion in accepting Appellant's plea as knowingly, intelligently, and voluntarily entered. Appellant is not entitled to relief.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 11/13/2024